IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| GEORGE H. DAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 12-3330 |
| | ) | |
| MICHAEL BROWN, individually, | ) | |
| CHANCE WARNISHER, | ) | |
| individually, and STEVE STIRMELL, | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

This is a civil rights action pursuant to 42 U.S.C. § 1983, wherein Plaintiff George H. Dawson has filed a six-count Complaint asserting excessive force, assault and battery, failure to intervene and conspiracy to interfere with the Plaintiff's civil rights against Michael Brown, Chance Warnisher and Steve Stirmell in their individual capacities. Pending before the Court is Defendant Steve Stirmell's Motion for Summary Judgment.

## I. FACTUAL BACKGROUND

### A. George Dawson's testimony

Plaintiff George Dawson resides at 2408 South Lowell Road in Springfield, Illinois. On December 14, 2011, the Plaintiff answered a knock on his door. There were a number of police officers present.

The police officers inquired if the Plaintiff knew where his son was. The Plaintiff testified that one of the officers, a sheriff's deputy, told him that his son, Greg Dawson, was a drug dealer. On the evening in question, the Plaintiff's son was driving a 2010 Chevy pickup truck that belongs to Country Market, the Plaintiff's business. While the officers looked for his son, the Plaintiff remained outside of his home talking to officers and standing in his driveway. At some point, the Plaintiff became aware of an altercation occurring near the side door of his home. He could not recall how long this was after the officers knocked at his door. The Plaintiff testified he went to the side of his house and observed Officer Chance Warnisher, and perhaps another officer, attempting to subdue Greg Dawson in the driveway by the side door of the home.

The Plaintiff alleges he observed Officer Warnisher use his taser on Greg Dawson. He testified that while Warnisher or perhaps another officer

was holding Greg Dawson down, the Plaintiff approached with his hands raised. The Plaintiff claims he said, "Please don't kill him." The Plaintiff testified that when he was three to four feet from Warnisher, the officer–who was bent over Greg Dawson–kicked out at the Plaintiff and struck him. Warnisher did not give the Plaintiff any warning that he was about to kick him and the first notice he had is when the kick was approaching. The Plaintiff testified that the kick did not cause him to fall to the ground and that immediately after the kick another officer tackled him from behind and took him to the ground. The tackle occurred one or one and a half seconds after the kick. The Plaintiff believes it was Officer Brown who tackled him from behind.

The Plaintiff testified that he never touched any of the officers before being kicked by Officer Warnisher and tackled by the other officer. Except for being kicked and then shoved or tackled thereafter, the Plaintiff was not physically struck at any other time on the night of the incident. He does not believe Officer Stirmell physically contacted him in any manner. There were no words spoken by anyone between the time he was kicked and when

he was struck from behind by Officer Brown.

## B. Defendant Steve Stirmell's testimony

On December 14, 2011, Steve Stirmell was employed as a police officer for the Village of Jerome. Stirmell observed a pick-up truck speeding at 10:28 p.m. He caught the pick-up truck speeding on Iles Avenue and turned on his siren. Despite the siren, the truck did not stop. However, the truck observed all road signs while being pursued. The truck eventually stopped in the 2400 block of Lowell, in front of the residence belonging to George Dawson. The driver of the truck got out and attempted to enter the residence at 2408 Lowell and Officer Stirmell pursued him on foot. The individual then took off running again and went over a fence in the backyard.

After the suspect jumped over the fence, Officer Stirmell ceased pursuit and began to search the white pick-up truck. During the search, a Springfield police car driven by Officer Brown arrived on the scene. Stirmell was informed by dispatch that the individual who was driving the truck had a warrant out for his arrest for dangerous drugs. It was later

determined that the information provided by dispatch did not, in fact, apply to the Plaintiff's son but rather to another individual named Greg Dawson. Stirmell testified that the fact that an individual is wanted on a warrant for dangerous drugs would not cause him to treat that person any differently than any other individual who fled from a traffic stop.

Officer Warnisher eventually arrived on the scene. Based upon the information provided by dispatch, Officer Stirmell advised Officers Brown and Warnisher there was an outstanding warrant for Greg Dawson's arrest on a charge related to dangerous drugs. Subsequently, Stirmell and Warnisher knocked on the front of Mary and George Dawson's home and Warnisher advised them that Greg Dawson had fled from them and he was wanted for dangerous drugs. The Dawsons did not know where Greg Dawson was located.

Officers Brown, Warnisher, Sheriff's Deputy Dickason and Dickason's canine partner, Dino, began a canine track for Greg Dawson in the backyard of George Dawson's residence. No more than two minutes later, Stirmell heard Deputy Dickason yelling verbal commands. After

hearing the verbal commands coming from the front of the residence, Stirmell ran around to the side of the house and observed Warnisher attempting to apprehend Greg Dawson in the driveway at 2408 South Lowell. Warnisher had Greg Dawson up against the house and was trying to get him to the ground. Defendant Stirmell contends the Plaintiff at this time was at the back door of the home but within the residence. The Plaintiff claims he was in the driveway. Office Brown was not present at this point. In attempting to assist Warnisher in subduing Greg Dawson, Stirmell grabbed his legs and the officers were able to get Greg on the ground in the driveway, though he continued to struggle.

Defendant Stirmell alleges Officer Brown arrived on the scene and deployed his taser on Greg Dawson. The Plaintiff claims he observed Warnisher use his taser on Greg Dawson. By this time, the Plaintiff had exited his home but was still near the side door. Stirmell asserts that as Officers Stirmell and Warnisher continued to attempt to subdue Greg Dawson, Stirmell felt the Plaintiff approach him from behind and rest his hand on Stirmell's back while saying "leave my son alone, leave my son

alone, don't hurt him." The Plaintiff contends that, as it appeared Warnisher was about to tase the younger Dawson a second time, the Plaintiff walked towards Warnisher with his hands held up to show he was not holding any weapons. The Plaintiff claims that while approaching Warnisher he said, "Please don't kill him." The Plaintiff testified he never touched any of the officers.

Defendant Stirmell claims he is aware that Officer Brown took action to get the Plaintiff away from Stirmell's back but Stirmell did not actually see Officer Brown contact the Plaintiff. Moreover, Stirmell did not see Warnisher kick the Plaintiff.

C. Defendant Chance Warnisher's testimony

On December 14, 2011, all that Springfield Police Officer Chance Warnisher knew about the Plaintiff's son prior to arriving at the scene was that a Jerome unit was attempting to stop a truck and the truck was refusing to stop. Warnisher learned this information from dispatch. At the scene and prior to locating Greg Dawson, Officer Stirmell informed Warnisher and Officer Brown that Greg Dawson was wanted on a warrant

for dangerous drugs. Warnisher testified that in responding to a situation where a suspect is fleeing, it would make no difference to him whether the individual had a warrant for dangerous drugs or whether he was fleeing due to intoxication.

Officer Warnisher testified that the video from Stirmell's car showed the officers talking to Plaintiff George Dawson and his wife, Mary, at the door to 2408 Lowell Street at approximately 11:54 p.m. on December 14, 2011. The video and audio depict officers explaining to the Plaintiff and his wife that they were looking for their son, Greg Dawson, because he was wanted for dangerous drugs and had fled from police officers. In the video, Warnisher told the Plaintiff that his son had fled from Stirmell.

Prior to any altercations with the Plaintiff, Deputy Dickason's canine partner, Dino, attempted to locate Greg Dawson. After Dino got his scent, he was able to locate the suspect but, because it was not a forcible felony, Dickason could not release his dog to attempt to apprehend Greg Dawson. Accordingly, Officer Warnisher pursued Greg Dawson on foot. During the foot chase, Warnisher deployed his Taser which he stated hit Greg Dawson

but was ineffective. He continued to chase Greg Dawson until Greg entered the Plaintiff's yard and attempted to enter the side door of the home. Warnisher testified that, while trying to subdue Greg Dawson, he had him in a bear hug while trying to stop him from entering the side door to the residence. He further testified that Plaintiff approached him yelling, "Let go of my fucking son. Let go of my son." The Plaintiff disputes that testimony, saying he walked towards Warnisher and simply said, "Please don't kill him."

Officer Warnisher also testified he attempted to turn so that Greg Dawson was between him and the Plaintiff and, as the Plaintiff kept approaching, he kicked him once in the lower stomach to get the Plaintiff to back away. The Plaintiff alleges that when he was three to four feet away, Warnisher kicked him in the torso.

The Defendants allege that after the kicking incident, Officer Stirmell came on to the scene and attempted to help Warnisher wrestle the Plaintiff's son to the ground. Warnisher estimated there were approximately 10 or 11 seconds from the time that he kicked the Plaintiff

until Stirmell arrived.  The Plaintiff disputes this and alleges that Plaintiff was still inside his residence when Stirmell arrived at the driveway. Warnisher testified that he lost sight of the Plaintiff while he and Stirmell attempted to continue subduing Greg Dawson.  Warnisher testified he believed that Plaintiff was trying to interfere with a lawful arrest and refused to follow a verbal command.  Warnisher further testified he did not warn the Plaintiff that if he did not get back, he was going to kick the Plaintiff.  He simply told the Plaintiff to "get back."

Officer Warnisher had no conversations with Officer Stirmell at any time before the incident regarding the use of force to be used against the Plaintiff.  After kicking the Plaintiff and turning his attention back to Greg Dawson, Warnisher heard Officer Brown warning the Plaintiff to get back and saw him push the Plaintiff out of the corner of his eye.  When he first grabbed Greg Dawson near the side door, Warnisher did not see the Plaintiff or Stirmell in the area.  Warnisher testified 15 to 20 seconds elapsed between the time he first made contact with Greg Dawson by the side door until both Greg and the Plaintiff were in custody.

## D. Defendant Michael Brown's testimony

Michael Brown has been employed by the City as a police officer since April of 1998. On December 14, 2011, Brown was assigned to the operations division as a DUI patrol officer in the traffic service section of the police department. His main focus was on traffic enforcement. However, Brown also answered any high priority calls for service and, if he was in the area, he would usually respond to such calls.

On December 14, 2011, at approximately 11:50 p.m., Brown responded to the Plaintiff's residence to assist Stirmell. Brown had heard over his radio that a vehicle had failed to stop. By the time he arrived at the scene, Brown also knew that the driver of the vehicle had fled.

Brown testified the surveillance footage indicates Officer Stirmell stated that Greg Dawson was "99," which means that a person is wanted on a warrant. Moreover, Brown testified he does not believe he would change his approach to responding to a call where a person had fled from an officer just because the person had a warrant for dangerous drugs. He agrees Stirmell told other officers at the scene that the person who fled the vehicle

was wanted on a warrant for dangerous drugs.

Officer Brown testified that, during the period of the evening in which Officers Warnisher and Stirmell had Greg Dawson on the ground and were attempting to subdue him, he came upon the scene to see the Plaintiff approaching Warnisher's back with his hands outstretched. According to Brown, Stirmell was on the ground with Warnisher trying to subdue Greg Dawson at the time. The Plaintiff denies approaching Warnisher in that manner.

Officer Brown further testified he did not know if Stirmell was aware Brown was in the area while they were trying to subdue Greg Dawson. He testified that at the time of the alleged push, Stirmell's back would have been facing Brown. Similarly, Brown did not yell anything out to Officers Warnisher and Stirmell prior to pushing the Plaintiff.

Officer Brown testified he did yell out to Plaintiff George Dawson to "get back" as Brown approached the scene. The Plaintiff claims he was pushed by Brown towards Warnisher while Brown yelled, "get back." Brown did not threaten the Plaintiff as to what would happen if he did not

follow that command.  Although Brown contends the only physical contact he had with the Plaintiff was a single push, the Plaintiff claims that he was tackled from behind and driven into the cement driveway by Brown following the push.

Officer Brown testified he was not aware of any physical contact between Officer Stirmell and the Plaintiff.  Brown estimated that possibly two to three seconds elapsed between the time that he came around the corner and first observed Stirmell and Warnisher attempting to subdue Greg Dawson and the time that he pushed the Plaintiff.

Defendant Stirmell asserts that at no time during the evening was there any discussion between the officers regarding any need to subdue the Plaintiff.  However, the Plaintiff alleges Warnisher and Brown discussed and jointly decided that Plaintiff should be placed under arrest.  The criminal charge against the Plaintiff was dismissed soon thereafter.

The Plaintiff filed a six-count complaint.  Counts V and VI are directed at Officer Stirmell.  In Count V, the Plaintiff asserts Stirmell violated his rights when he failed to intervene to prevent the use of

excessive force or the false arrest of the Plaintiff. In Count VI, the Plaintiff contends that Stirmell conspired with Brown and Warnisher to interfere with the Plaintiff's civil rights, in violation of 42 U.S.C. § 1983.

Defendant Steve Stirmell alleges he is entitled to summary judgment as to the claims asserted against him.[1] The Plaintiff contends factual disputes preclude the entry of summary judgment.

## II. DISCUSSION

Officer Stirmell advances multiple reasons for the entry of summary judgment. First, Stirmell alleges the degree of force utilized by Officers Warnisher and Brown was not excessive. Next, he contends that Plaintiff has not proffered any evidence that would allow a jury to conclude that Stirmell had a realistic opportunity to intervene to stop any alleged excessive force. Additionally, Stirmell asserts the Plaintiff has failed to present any evidence in support of his civil conspiracy claim. Finally, Stirmell claims he is entitled to summary judgment on the Plaintiff's false arrest claims because he was not involved in the decision to arrest the

---

[1]Defendants Michael Brown and Chance Warnisher have separately moved for summary judgment.

Plaintiff. Officers Warnisher and Brown made that decision.

A. Legal standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The Court construes all inferences in favor of the non-movant. *See Siliven v. Indiana Dept. of Child Services*, 635 F.3d 921, 925 (7th Cir. 2011). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). Because summary judgment "is the put up or shut up moment in a lawsuit," a "hunch" about the opposing party's motives is not enough to withstand a properly supported motion. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor. *See id.*

B. Excessive force claim against Stirmell

A police officer is not liable for another officer's use of excessive force

unless that officer had a realistic opportunity to intervene and stop the first officer's actions. *See Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014). "A realistic opportunity means a chance to warn the officer using excessive force to stop." *Id.* (internal quotation marks omitted).

The Court concludes that even assuming the other officers employed excessive force, Officer Stirmell did not have a reasonable opportunity to warn them to stop. The two actions relied on by the Plaintiff in asserting excessive force are the single straight kick utilized by Officer Warnisher to the Plaintiff's midsection and, "one to one and a half seconds later," the shove or tackle by Officer Brown causing the Plaintiff to fall to the ground. Even assuming Stirmell witnessed the occurrence, the Court concludes that he could not have prevented the use of excessive force. Warnisher did not provide any sort of verbal warning that he would employ a straight kick to deter the Plaintiff. Accordingly, Stirmell could not have prevented the occurrence. Moreover, Stirmell could not have prevented Brown's shove or tackle of the Plaintiff less than two seconds later. The Plaintiff testified that this occurred "within the snap of a finger." At the time, Stirmell was

attempting to subdue Greg Dawson.

The Plaintiff contends there are a number of discrepancies in the witness testimony and no undisputed facts as to what occurred in the driveway. However, it is undisputed that the acts which make up the Plaintiff's excessive force claim occurred in quick succession after the Plaintiff approached officers trying to subdue an individual who was resisting arrest. The Court concludes that no jury could find an officer who was preoccupied with apprehending another individual could be liable for failure to intervene under these circumstances. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (concluding that non-intervening officer did not have realistic opportunity to prevent three punches in quick succession to plaintiff); *see also Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477-78 (7th Cir. 1997) (concluding that non-intervening officer did not have realistic opportunity to prevent one violent poke and push administered by the other officer).

Officer Stirmell did not have sufficient time to prevent the use of the alleged excessive force by other officers who were present at the scene.

Even when viewing the facts in the light most favorable to the Plaintiff, therefore, the Court concludes that Stirmell did not have a realistic opportunity to intervene and prevent the use of excessive force as alleged by the Plaintiff. To the extent that Plaintiff's claim is premised on a failure to intervene to prevent excessive force, Stirmell is entitled to summary judgment.

## C. Failure to intervene to prevent false arrest

The Plaintiff also asserts a claim under § 1983 against Officer Stirmell for failure to intervene to prevent the Plaintiff's false arrest. As with excessive force, an officer has a duty to intervene to prevent a false arrest if the officer is informed of the facts that establish a constitutional violation and is able to prevent it. *See Morfin v. City of Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003).

Officer Stirmell testified that he had no role in arresting the Plaintiff. He stated the decision was made by Officer Brown. Officer Brown testified that Officer Warnisher took the Plaintiff into custody. Brown and Warnisher made the decision to arrest the Plaintiff after a brief discussion.

There was no testimony that Stirmell had any role in the decision.

None of the evidence cited by the Plaintiff supports the assertion that Stirmell was involved in the Plaintiff's arrest. The only competent evidence establishes that Stirmell had no role in the decision. At this stage, the Plaintiff cannot rely on speculation and must come forth with specific supporting material in order to defeat a summary judgment motion. *See Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008).

Additionally, as the Court noted in discussing the excessive force claim, Officer Stirmell was attempting to subdue Greg Dawson at the same time the other officers were engaged with the Plaintiff. Because Stirmell did not witness the entire encounter between the Plaintiff and the other officers, he could not know whether the Plaintiff had violated any laws and was subject to arrest. Therefore, Stirmell could not have been informed of facts that establish that Plaintiff was falsely arrested.

For all of these reasons, the Court concludes that Stirmell is entitled to summary judgment as to the failure to prevent false arrest claims directed against him.

D. Conspiracy claims

In Count VI, the Plaintiff alleges that Officer Stirmell conspired with Brown and Warnisher to use excessive force and subject him to a false arrest. A civil conspiracy involves an agreement or understanding among more than one person that the individuals will violate another person's constitutional rights. *See Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). The existence of a conspiracy can be inferred from circumstantial evidence. *See Richardson v. City of Indianapolis*, 658 F.2d 494, 500 (7th Cir. 1981). However, a conspiracy cannot be established by evidence that is speculative. *See Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003).

(1)

In support of the conspiracy, the Plaintiff notes it is undisputed that prior to the incident in question, Stirmell referred to the Plaintiff as a "fucking dick." Stirmell testified that in a prior incident, he was conducting a traffic stop in the parking lot of Country Market, the Plaintiff's business. The Plaintiff came outside and told Stirmell to turn his lights off.[2] The

---

[2]Initially, Stirmell stated that Plaintiff told him to "turn your fucking lights off." In his deposition, however, Stirmell testified that he did not believe

Plaintiff asserts the Court should reasonably infer that the only reason Stirmell made the statements was to prejudice the other law enforcement officers against the Plaintiff.

Officer Brown testified he was probably still in the yard when Stirmell referred to the Plaintiff as a "fucking dick." Stirmell was in the driveway when he made that statement. Although the front yard is not very big, Brown testified he did not hear Stirmell's description of the Plaintiff. However, the Plaintiff contends the Court should reasonably infer that Brown overheard Stirmell's disparaging reference to him.

The digital recording device in Officer Stirmell's car captured a conversation which occurred after the Plaintiff's arrest. At one point, Stirmell said: "Well, he [the Plaintiff] tried to come up on my back as I was fucking hooking [handcuffing] his kid and city took him [the Plaintiff] down." Subsequently, Springfield Police Officer Rhett Spangle can be heard saying, "Did you hear dad [the Plaintiff], 'oh fuck, I'm having a heart attack,'" followed by laughter from the other officers who were present.

---

the Plaintiff used an expletive when he told the officer to turn his lights off.

Soon thereafter, Warnisher can be heard saying, "I already kicked Dad once and struck him in the chest before you got there" followed by another officer saying, "I saw him go flying," with laughter then heard among the officers. Subsequently, Stirmell can be heard saying, "Now you see why I said dad's a fucking asshole." A few minutes later, Warnisher can be heard saying, "He [the Plaintiff] got kicked right in the chest" followed by Stirmell responding, "That was fucking hilarious." Soon thereafter, a voice can be heard saying, "You're such a bad ass, pushing a 70-year old man around," to which Brown responded, "Hell yeah, I will."

Based on the foregoing, the Plaintiff contends the recorded comments by the Defendants evince their animus towards him and a disregard for his right to be free from the use of excessive force and false arrest. Moreover, a jury could find this constitutes evidence that Officer Stirmell condoned Warnisher's alleged unnecessary act of kicking the Plaintiff in the chest and, further, approved of Brown's actions.

The Plaintiff further asserts the information included in the Defendants' police reports is also illustrative of their animus towards the

Plaintiff. Stirmell described the Plaintiff as irate when he was (falsely) told that his son was wanted for dangerous drugs. Warnisher also described the Plaintiff as "rude and irate" upon finding out his truck would be towed. Brown observed that, while talking to Stirmell at their front door, the Plaintiff and his wife became very upset with the officer and the Plaintiff stated he did not believe anything Stirmell told him. Neither Brown nor Warnisher noted in their police reports that Stirmell had falsely told the Plaintiff that Greg Dawson was wanted on a warrant for a drug offense, even though the Plaintiff claims the false information may have caused his rudeness or disbelief.

The Plaintiff also alleges that in their reports, the officers emphasize the Plaintiff's insistence that they were not towing his truck. He contends that although Officer Brown states in his report that the details were explained to him, there is no record evidence that the Plaintiff was ever given a reason. Accordingly, the Plaintiff alleges that the officers included in their reports information which portrayed him in a negative light while omitting anything that was favorable to the Plaintiff or facts which might

portray the officers negatively.

The Plaintiff further contends that the information in Officer Warnisher's police report regarding the circumstances following his kick to the Plaintiff is inconsistent with Warnisher's deposition testimony. In their police reports, moreover, the Defendants attempted to minimize Brown's acting "like a bad ass, pushing some old man around." Warnisher wrote that Brown simply pushed the Plaintiff away. Brown stated that after he pushed the Plaintiff away, the Plaintiff tripped and lost his balance.

The record establishes that because of a previous encounter in the Country Market parking lot, Officer Stirmell apparently does not personally like the Plaintiff. Stirmell referred to the Plaintiff as a "fucking dick," a "fucking asshole" and laughed about the events of the night. There is also little question that the officers included in their police reports only information that supported their version of events and omitted anything that might be construed as favorable to the Plaintiff.

Even assuming there is a factual dispute regarding whether excessive force was used, however, there simply is no evidence of an agreement or

understanding between Officer Stirmell and the others to use excessive force against the Plaintiff. The force used against the Plaintiff was in reaction to events that night which would have been virtually impossible to foresee. The officers were at the Plaintiff's home only because that is where the Plaintiff's son stopped his vehicle and fled. There is no evidence that, upon arriving at the Plaintiff's address the officers, while searching for Greg Dawson, conspired or agreed to use excessive force against the Plaintiff. By all accounts, it was a rapidly evolving situation and there would have been little time to come to such an agreement. In assessing reasonableness, courts must recognize that police officers often make split-second decisions when confronted with a scenario like this one. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* at 397.

The record suggests that force was used because the Plaintiff approached officers trying to subdue an individual who was resisting arrest.

There is no indication a particular degree of force was used by Warnisher and Brown because of Stirmell's personal views of the Plaintiff. Accordingly, Stirmell is entitled to summary judgment on the Plaintiff's conspiracy to use excessive force claim.

(2)

The Court also concludes that Officer Stirmell is entitled to summary judgment on the conspiracy to falsely arrest claim because there is no evidence he had any role in arresting the Plaintiff.[3]  Moreover, even if Stirmell informed the other officers of his previous encounter with the Plaintiff, the Court concludes that Stirmell's apparent disdain for the Plaintiff did not influence those officers to falsely arrest the Plaintiff.

The conspiracy claim as to Stirmell is based on speculation as to Officer Stirmell's motives following a previous encounter with him. Although it is apparent that Stirmell bears some degree of animus toward

---

[3]Additionally, it is worth noting that Officer Stirmell could have reasonably believed there was probable cause to arrest the Plaintiff for obstructing a police officer when Stirmell was attempting to subdue Greg Dawson.  The Plaintiff testified he was within three to four feet of the struggle when he approached the officer.  Therefore, Stirmell could have reasonably believed the Plaintiff was attempting to interfere with the officers.

the Plaintiff due to that occurrence, the Plaintiff needs more than speculation to withstand summary judgment on his claim that Stirmell conspired with other officers to falsely arrest him. *See Williams*, 342 F.3d at 785.

Accordingly, the Court concludes that Defendant Stirmell is entitled to summary judgment on the claims directed at him.

Ergo, the Motion of Defendant Steve Stirmell for Summary Judgment [d/e 50] is ALLOWED.

Count V is Dismissed. The claims in Count VI relating to Defendant Stirmell are Dismissed.

The Clerk will terminate Defendant Stirmell as a party.

ENTER: February 25, 2015

FOR THE COURT:

*s/Richard Mills*
Richard Mills
United States District Judge