IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

GEORGE H. DAWSON,               )
                                )
        Plaintiff,              )
                                )
        v.                      )        NO. 12-3330
                                )
MICHAEL BROWN, individually,    )
CHANCE WARNISHER,               )
individually, and STEVE STIRMELL, )
individually,                   )
                                )
        Defendants.             )

<u>OPINION</u>

RICHARD MILLS, U.S. District Judge:

This is a civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff George H. Dawson has filed a six-count Complaint asserting

excessive force, assault and battery, failure to intervene and conspiracy to

interfere with the Plaintiff's civil rights against Michael Brown, Chance

Warnisher and Steve Stirmell in their individual capacities.

Pending before the Court is a Motion for Summary Judgment filed by

Defendants Michael Brown and Chance Warnisher.

# I. INTRODUCTION

In Count I, the Plaintiff brings a § 1983 claim against City of Springfield Police Officer Chance Warnisher, asserting that he used excessive force in effectuating his arrest.

In Count II, the Plaintiff asserts assault and battery claims, alleging that Warnisher intentionally kicked the Plaintiff in the torso without any cause, encouragement, provocation or consent by the Plaintiff.

In Count III, the Plaintiff brings a § 1983 claim against City of Springfield Police Officer Michael Brown, asserting that he used excessive force in effectuating the Plaintiff's arrest.

In Count IV, the Plaintiff contends Brown committed the torts of assault and battery on the Plaintiff, alleging that he pushed or tackled the Plaintiff to the ground without cause, encouragement, provocation or consent by the Plaintiff.

Count V is addressed solely at Defendant Steve Stirmell and is addressed in a separate Opinion and Order.

In Count VI, the Plaintiff alleges that Warnisher and Brown

conspired with each other and Stirmell[1] to deprive the Plaintiff of his statutory and constitutional rights to be free from the use of unreasonable force and unlawful arrest.

Defendants Warnisher and Brown claim they are entitled to summary judgment on Counts I-IV and VI. The Plaintiff contends that because there are multiple accounts of what occurred immediately prior to and during the Plaintiff's arrest, factual disputes preclude the entry of summary judgment as to those claims.

## II. FACTUAL BACKGROUND

### A. George Dawson's testimony

Plaintiff George Dawson resides at 2408 South Lowell Road in Springfield, Illinois. On December 14, 2011, the Plaintiff answered a knock on his door. There were seven or eight police officers present.

The police officers inquired if the Plaintiff knew where his son was. The Plaintiff testified that one of the officers, a sheriff's deputy, told him that his son, Greg Dawson, was a drug dealer. On the evening in question,

---

[1]In a separate Opinion and Order, the Court entered summary judgment in favor of Defendant Stirmell as to all claims asserted against him.

the Plaintiff's son was driving a 2010 Chevy pickup truck that belongs to Country Market, the Plaintiff's business. While the officers looked for his son, the Plaintiff remained outside of his home talking to officers and standing in his driveway. At some point, the Plaintiff became aware of an altercation occurring near the side door of his home. He could not recall how long this was after the officers knocked at his door. The Plaintiff testified he went to the side of his house and observed Officer Chance Warnisher, and perhaps another officer, attempting to subdue Greg Dawson in the driveway by the side door of the home.

The Plaintiff alleges he observed Officer Warnisher use his taser on Greg Dawson. He testified that while Warnisher or perhaps another officer was holding Greg Dawson down, the Plaintiff approached with his palms up. The Plaintiff testified that when he was three to four feet from Warnisher, the officer–who was bent over Greg Dawson–kicked out at the Plaintiff and struck him. The Plaintiff saw the kick coming and turned sideways. Warnisher did not give the Plaintiff any warning that he was about to kick him and the first notice he had is when the kick was

approaching. The Plaintiff testified that the kick did not cause him to fall to the ground and that immediately after the kick another officer tackled him from behind and drove him to the ground. The Plaintiff thinks it was Officer Brown who tackled him from behind.

The Plaintiff testified he never touched any of the officers before being kicked by Officer Warnisher and tackled by the other officer. After he was tackled, the Plaintiff got right up and sat on the stairs. He was dazed and some of the details are blurry. Except for being kicked and then shoved or tackled thereafter, the Plaintiff was not physically struck at any other time on the night of the incident. There were no words spoken between him and the officers between the time he was kicked and when he was struck from behind by Officer Brown.

An ambulance arrived at the scene. Although the Plaintiff told the arresting officer he was bleeding, he was not then taken to the emergency room. The Plaintiff's daughter took him there after booking.

B. Defendant Steve Stirmell's testimony

On December 14, 2011, Steve Stirmell was employed as a police

officer for the Village of Jerome.  Stirmell observed a pick-up truck speeding on Iles Avenue at 10:28 p.m., and activated his siren.  Despite the siren, the truck did not stop.  The truck eventually stopped in the 2400 block of Lowell, in front of the residence belonging to George Dawson.  The driver of the truck got out and attempted to enter the residence at 2408 Lowell as Stirmell pursued him on foot.  The individual then took off running again and went over a fence in the backyard.

After the suspect jumped over the fence, Officer Stirmell ceased pursuit and began to search the white pick-up truck.  During the search, a Springfield police car driven by Officer Brown arrived on the scene.  At some point, Stirmell was informed by dispatch that the individual who was driving the truck had a warrant out for his arrest for dangerous drugs.  It was later determined that the information provided by dispatch did not, in fact, apply to the Plaintiff's son but rather to another individual named Greg Dawson.  Stirmell testified that the fact that an individual is wanted on a warrant for dangerous drugs would not cause him to treat that person any differently than any other individual who fled from a traffic stop.

Officer Warnisher eventually arrived on the scene. Based upon the information provided by dispatch, Stirmell advised Brown and Warnisher there was an outstanding warrant for Greg Dawson's arrest on a charge related to dangerous drugs. Subsequently, Stirmell and Warnisher knocked on the front door of Mary and George Dawson's home and Warnisher advised them that Greg Dawson had fled from them and he was wanted for dangerous drugs. The Dawsons did not know where Greg Dawson was located.

Officers Brown, Warnisher, Sheriff's Deputy Dickason and Dickason's canine partner, Dino, began a canine track for Greg Dawson in the backyard of George Dawson's residence. No more than two minutes later, Stirmell heard Deputy Dickason yelling verbal commands in the front of the residence. After hearing the verbal commands, Stirmell ran around to the side of the house and observed Warnisher attempting to apprehend Greg Dawson in the driveway at 2408 South Lowell. Warnisher had Greg Dawson up against the house and was trying to get him to the ground. The Defendants contend the Plaintiff at this time was at the back door of the

home but within the residence. The Plaintiff claims he was in the driveway. Office Brown was not present at this point. In attempting to assist Warnisher in subduing Greg Dawson, Stirmell grabbed his legs and the officers were able to get Greg on the ground in the driveway, though he continued to struggle.

The Defendants allege Officer Brown arrived on the scene and deployed his taser on Greg Dawson. The Plaintiff claims he observed Warnisher use his taser on Greg Dawson. By this time, the Plaintiff had exited his home but was still near the side door. The Defendants assert that as Officers Stirmell and Warnisher continued to attempt to subdue Greg Dawson, Stirmell felt the Plaintiff approach him from behind and rest his hand on Stirmell's back while saying "leave my son alone, leave my son alone, don't hurt him." The Plaintiff contends that, as it appeared Warnisher was about to tase the younger Dawson a second time, the Plaintiff walked towards Warnisher with his hands held up to show he was not holding any weapons. The Plaintiff claims that while approaching Warnisher he said, "Please don't kill him." The Plaintiff testified he never

touched any of the officers.

The Defendants allege Officer Stirmell is aware that Officer Brown took action to get the Plaintiff away from Stirmell's back but Stirmell did not actually see Officer Brown contact the Plaintiff. Moreover, Stirmell did not see Warnisher kick the Plaintiff. However, the Plaintiff notes that, according to the recording in Stirmell's car, Warnisher can be heard saying, "I already kicked Dad [the Plaintiff] once and struck him in the chest before you got there."

### C. Defendant Chance Warnisher's testimony

On December 14, 2011, Chance Warnisher had been employed as a Springfield Police Officer for about nine years. Based on dispatch communications, Warnisher knew prior to arriving at the scene that a Jerome unit was attempting to stop a truck and the truck was refusing to stop. At the scene and prior to locating Greg Dawson, Officer Stirmell informed Officers Warnisher and Brown that Greg Dawson was wanted on a warrant for dangerous drugs. Warnisher testified that in responding to a situation where a suspect is fleeing, it would make no difference to him

whether the individual had a warrant for dangerous drugs or whether he was fleeing due to intoxication.

Officer Warnisher testified that the video from Stirmell's car showed the officers talking to Plaintiff George Dawson and his wife, Mary, at the door to 2408 Lowell Street at approximately 11:54 p.m. on December 14, 2011. The video and audio depict officers explaining to the Plaintiff and his wife that they were looking for their son, Greg Dawson, because he was wanted for dangerous drugs and had fled from police officers.

Prior to any altercations with the Plaintiff, Deputy Dickason's canine partner, Dino, attempted to locate Greg Dawson. After Dino got his scent, he was able to locate the suspect but, because it was not a forcible felony, Dickason could not release his dog to attempt to apprehend Greg Dawson. Accordingly, Officer Warnisher pursued Greg Dawson on foot. During the foot chase, Warnisher deployed his Taser which he stated hit Greg Dawson but was ineffective. He continued to chase Greg Dawson until Greg entered the Plaintiff's yard and attempted to enter the side door of the home. Warnisher testified that, while trying to subdue Greg Dawson, he had him

in a bear hug while trying to stop him from entering the side door to the residence. He further testified that Plaintiff approached him yelling, "Let go of my fucking son. Let go of my son." The Plaintiff disputes that testimony, saying he walked towards Warnisher with his hands up and simply said, "Please don't kill him."

Officer Warnisher also testified he attempted to turn so that Greg Dawson was between him and the Plaintiff and, as the Plaintiff kept approaching, he kicked him once in the lower stomach to get the Plaintiff to back away. The Plaintiff alleges that when he was three to four feet away, Warnisher kicked him in the torso. Warnisher kicked forward using the bottom of the sole and applied pressure pushing the Plaintiff backwards.

The Defendants allege that after the kicking incident, Officer Stirmell came on to the scene and attempted to help Warnisher wrestle the Plaintiff's son to the ground. Warnisher estimated there were approximately 10 or 11 seconds from the time that he kicked the Plaintiff until Stirmell arrived. The Plaintiff disputes this and alleges that Plaintiff

was still inside his residence when Stirmell arrived at the driveway. Warnisher testified that he lost sight of the Plaintiff while he and Stirmell attempted to continue subduing Greg Dawson. Warnisher testified he believed that Plaintiff was trying to interfere with a lawful arrest and refused to follow a verbal command. Warnisher further testified he did not warn the Plaintiff that if he did not get back, he was going to kick the Plaintiff. He simply told the Plaintiff to "get back."

Officer Warnisher had no conversations with Officer Stirmell at any time before the incident regarding the use of force to be used against the Plaintiff. After kicking the Plaintiff and turning his attention back to Greg Dawson, Warnisher heard Officer Brown warning the Plaintiff to get back and saw him push the Plaintiff out of the corner of his eye. When he first grabbed Greg Dawson near the side door, Warnisher did not see the Plaintiff or Stirmell in the area. Warnisher testified the amount of time which elapsed between him first making contact with Greg Dawson by the side door until both Greg and the Plaintiff were in custody was 15 to 20 seconds.

After Greg Dawson was arrested, the Plaintiff was arrested and handcuffed. Officer Warnisher testified the Plaintiff was arrested because he approached in an assaulting manner. The Plaintiff claims the decision to arrest him was made jointly by Warnisher and Brown. Warnisher believed the Plaintiff intended to intervene in the lawful arrest of his son and he disobeyed a direct order from a police officer.

D. Defendant Michael Brown's testimony

Michael Brown has been employed by the City as a police officer since April of 1998. On December 14, 2011, Brown was assigned as a patrol officer in the Traffic Services Division. His main focus was on traffic enforcement. However, Brown also answered any high priority calls for service and, if he was in the area, he would usually respond to such calls.

On December 14, 2011, at approximately the 11:50 p.m. mark of the tape, Brown responded to the Plaintiff's residence to assist Stirmell. Brown had heard over his radio that a vehicle had failed to stop. By the time he had arrived at the scene, Brown also knew that the driver of the vehicle had fled.

Brown testified the surveillance footage indicates that Officer Stirmell stated that Greg Dawson was "99," which means that a person is wanted on a warrant. Moreover, Brown testified he does not believe he would change his approach to responding to a call where a person had fled from an officer just because the person had a warrant for dangerous drugs. He agrees Stirmell told other officers at the scene that the person who fled the vehicle was wanted on a warrant for dangerous drugs.

Officer Brown testified that, during the period of the evening in which Officers Warnisher and Stirmell had Greg Dawson on the ground and were attempting to subdue him, he came upon the scene to see the Plaintiff approaching Warnisher's back with his hands outstretched, saying "That's my son." According to Brown, Stirmell was on the ground with Warnisher trying to subdue Greg Dawson at the time. The Plaintiff denies approaching Warnisher in that manner.

Officer Brown further testified he did not know if Stirmell was aware Brown was in the area while they were trying to subdue Greg Dawson. He testified that at the time of the alleged push, Stirmell's back would have

been facing Brown.  Similarly, Brown did not yell anything out to Officers Warnisher and Stirmell prior to pushing the Plaintiff.

Officer Brown testified he did yell out to Plaintiff George Dawson to "get back" as Brown approached the scene.  The Plaintiff claims he was pushed by Brown towards Warnisher while Brown yelled, "get back." Brown did not threaten the Plaintiff as to what would happen if he did not follow that command.  Brown contends the only physical contact he had with the Plaintiff was a single push, after which the Plaintiff tripped over a post.  However, the Plaintiff disputes the assertion and claims that he was tackled from behind and driven into the cement driveway.

Officer Brown testified he was not aware of any physical contact between Officer Stirmell and the Plaintiff.  Brown estimated that possibly two to three seconds elapsed between the time that he came around the corner and first observed Stirmell and Warnisher attempting to subdue Greg Dawson and the time that he tackled the Plaintiff.

The officers had no discussion regarding any need to subdue the Plaintiff.  Officer Brown believed an arrest was warranted based on

information from Warnisher and his own observations. However, the Plaintiff alleges Warnisher and Brown discussed and jointly decided that Plaintiff should be placed under arrest. The criminal charge against the Plaintiff was dismissed soon thereafter.

The Plaintiff filed a six-count complaint. Defendants Warnisher and Brown contend they are entitled to summary judgment as to all claims asserted against them. The Plaintiff contends factual disputes preclude the entry of summary judgment.

## III. DISCUSSION

Officers Warnisher and Brown advance a number of reasons as to why summary judgment should be entered in their favor. They claim the level of force utilized by Officers Warnisher and Brown was not excessive under the circumstances and/or their use of force was justified. Moreover, there is no evidence of a conspiracy to interfere with the Plaintiff's civil rights. Additionally, Warnisher and Brown contend that they are entitled to qualified immunity.

A. Legal standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The Court construes all inferences in favor of the non-movant. *See Siliven v. Indiana Dept. of Child Services*, 635 F.3d 921, 925 (7th Cir. 2011). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). Because summary judgment "is the put up or shut up moment in a lawsuit," a "hunch" about the opposing party's motives is not enough to withstand a properly supported motion. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor. *See id.*

B. Qualified immunity

(1)

A public official may is protected by qualified immunity from liability for reasonable mistakes made in the performance of his or her duties. *See*

*Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013). The inquiry involves determining whether an individual's constitutional or statutory rights have been violated and, if so, whether the right was "clearly established at the time of such violation such that a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotation marks and citation omitted).

If the plaintiff establishes the violation of a constitutional right, he must then "show that the right is clearly established such that the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotation marks and citation omitted). A plaintiff alleging excessive force may meet this burden "either by identifying a closely analogous case that established a right to be free from the type of force the police officers used on him or by showing that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment." *Id.* (internal quotation marks and citation omitted).

There is no question that it was clearly established in 2011 that a

police officer may not use excessive force in arresting an individual. *See Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 687 (7th Cir. 2007). The question thus becomes whether a reasonable police officer would have understood that he was using excessive force on the Plaintiff. The amount of force which is permitted depends upon the particular situation, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Smith v. Ball State Univ.*, 295 F.3d 763, 770 (7th Cir. 2002) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "When police officers face what is essentially a fluid situation, they are entitled to graduate their response to meet the demands of the circumstances confronting him." *Id.* Therefore, if an arriving officer may reasonably but mistakenly believe that a struggle is occurring, the use of force must be evaluated based on the circumstances as they appeared to the officer at the time of the encounter and not with the benefit of hindsight. *See id.* at 770-71.

The Plaintiff has not here pointed to a clearly analogous case. The

Plaintiff cites *Clash v. Beatty*, 77 F.3d 1045 (7th Cir. 1996). However, that case involved the extent of force used on an individual who was handcuffed and known not to be carrying weapons. *See id.* at 1046-47. The Plaintiff was not handcuffed and, although he alleges he approached the officers with his hands up to show that he was not carrying any weapons, the officers had not searched the Plaintiff and could not know whether he was armed or whether he intended to interfere with their efforts to subdue Greg Dawson.

The Plaintiff also cites *Howard v. Ealing*, 876 F. Supp.2d 1056 (N.D. Ind. 2012), for the proposition that one violent push or poke constitutes excessive force when there is no provocation. *See id.* at 1070. Unlike this case, however, *Howard* did not involve a situation where someone approached a police officer who was trying to subdue a suspect. Rather, it concerned an individual who had been subdued and was complying with the officer's orders. *See id.* at 1069-70. That case was also decided after the incident at issue in this case.

(2)

The cases cited by the Plaintiff are not analogous to the facts of this case.  The Plaintiff has not pointed to any case which holds that a police officer uses excessive force by kicking an individual who approaches to within three or four feet when officers are trying to subdue or apprehend a suspect who is resisting arrest.

The Plaintiff testified that he was within three or four feet of Officer Warnisher when the officer was tasing his son.  The Plaintiff testified "I showed my hands.  I had no weapons, no nothing.  I said, just don't kill him, and that's when he kicked me."  The Plaintiff also notes that he had attempted to assist the Defendants by calling Greg Dawson on his cell phone.

Of course, the Court must assume the truth of the Plaintiff's account of what he told Officer Warnisher.  However, Warnisher could not know what the Plaintiff was thinking or whether he was armed when the Plaintiff approached Warnisher as he was attempting to subdue his son, who was resisting arrest.  Based on his own testimony, the Plaintiff was almost close

enough to the officer to seize control of his weapon or at least offer assistance to his son. Warnisher testified he believed the Plaintiff might interfere as the officer was "wrestling with his son." Even though the Plaintiff was 72-years old and was simply telling the officer not to kill his son, therefore, it was reasonable for Warnisher to perceive the Plaintiff as a threat. This is particularly true if, as his testimony suggests, the Plaintiff actually believed the officers might kill his son. The record indicates the officers were simply trying to arrest an individual who was resisting arrest.

The Plaintiff has not pointed to a clearly analogous case. Additionally, the Court declines to hold that Warnisher's kick of the Plaintiff was so plainly excessive as to constitute excessive force, when the Plaintiff approached to within three or four feet of a police officer who was engaged with a suspect believed to be dangerous. Accordingly, Warnisher is entitled to summary judgment on the Plaintiff's excessive force claim.

(3)

The Plaintiff's claim that Officer Brown used excessive force is somewhat stronger. There are factual disputes as to what precisely

22

occurred.  When there are material factual disputes, the case usually must be decided by a jury.  *See Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003). However, if enough material facts justify the officer's conduct objectively, then there is nothing for a jury to do except second-guess the officers, which is not permitted.  *See id.*

Although Brown testified he pushed the Plaintiff "pretty hard" which resulted in him losing his balance and falling to the ground, the Plaintiff testified he was tackled by Brown and driven to the ground.  For purposes of the motion, the Court assumes the Plaintiff's account is true.

Officer Brown testified he did not observe Warnisher kick the Plaintiff.  However, he did see the Plaintiff approach Warnisher.  Brown testified the Plaintiff was approaching Warnisher with his arms extended, apparently intending to grab the officer as he was struggling with Greg Dawson.  As noted above, the Plaintiff testified that he approached Warnisher with his hands up as if to show he had no weapons, asking the officers not to kill his son.

Because the Plaintiff has not cited a "closely analogous case" which

establishes the level of force used by Officer Brown was excessive, the Court must consider whether it was so "plainly excessive that, as an objective matter," he would have been on notice he was violating the Fourth Amendment.

Based on the undisputed facts of this case, the Court is unable to conclude that Officer Brown's tackle of the Plaintiff constituted excessive force. The testimony suggests Brown came upon a fluid situation that was quickly evolving. The Court must assume that Plaintiff's hands were extended to show that he had no weapons and he came to within three or four feet of Officer Warnisher as he tried to subdue Greg Dawson.

Whatever the Plaintiff's testimony about the position of his hands and his statement as he approached the struggle, the Court must consider the situation from the perspective of a reasonable police officer. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Assuming the truth of the Plaintiff's testimony, the Court concludes it was

reasonable for Officer Brown to mistakenly believe the Plaintiff was interfering with an arrest. Because the Plaintiff was approaching the officer with his hands out, he was almost to the point that he could make physical contact with Warnisher when he came to within three or four feet. Officer Brown knew it was the Plaintiff's son who was on the ground struggling. If, as the Plaintiff testified, he really believed that his son might be killed and he was communicating this fear to the police officers, the Court can only conclude that the officers reasonably believed the Plaintiff was trying to interfere with Greg Dawson's lawful arrest. Given these circumstances, the Court is unable to find that Officer Brown's quick decision to tackle the Plaintiff as he approached the officers attempting to lawfully apprehend the Plaintiff's son constituted excessive force.

Based on the totality of circumstances, the Court concludes that the amount of force was not so plainly excessive that an officer would have objectively believed he was violating the Fourth Amendment. Because the Plaintiff has not met this standard, Officers Warnisher and Brown are entitled to qualified immunity on the Plaintiff's excessive force claims.

C. Conspiracy claims

In Count VI, the Plaintiff alleges that Defendants Chance Warnisher, Michael Brown and Steve Stirmell conspired with one another to deprive the Plaintiff of statutory and constitutional rights to be free from the use of unreasonable force to effect and arrest the Plaintiff.  The claim is based on Warnisher's kick to the Plaintiff's torso "without cause or provocation," resulting in significant injuries and Brown's tackle of the Plaintiff on the concrete driveway, which also caused significant injuries to the Plaintiff. The Plaintiff alleges there is evidence that prior to the incident in the driveway, Stirmell told one of the other officers that Plaintiff was a "fucking dick" based on a prior encounter at Country Market.

A civil conspiracy under § 1983 involves an agreement or understanding among more than one person that the individuals will violate another person's constitutional rights.  *See Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007).  Although a conspiracy can be established by circumstantial evidence, it cannot be based on speculation.  *See Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003)

In asserting there was a conspiracy, the Plaintiff notes that the other officers may have heard Stirmell refer to the Plaintiff as a "fucking dick." Moreover, the officers included information in their police reports that reflected poorly on the Plaintiff and minimized any wrongdoing by the officers.

The Court concludes that Plaintiff's evidence of a conspiracy is entirely speculative and is insufficient to withstand summary judgment. As the Defendants note, there is no evidence that Warnisher and Brown had any relationship with Stirmell prior to the night of the incidents. Moreover, given how quickly the events unfolded, there would have been little time for the officers to agree to use excessive force, even if Stirmell had informed the other officers of his prior encounter with the Plaintiff.

The evidence suggests that if the Plaintiff had not approached the officers as they were attempting to subdue and arrest Greg Dawson, then Plaintiff would not have been kicked by Warnisher or tackled by Brown. But for his actions, the Plaintiff also would not have been arrested. Based on the Plaintiff's version of events (and specifically his proximity to the

officers attempting to lawfully arrest his son), the Court concludes the officers had arguable probable cause to arrest the Plaintiff for obstructing a police officer.

The Court notes that the officers were recorded on a digital device in Stirmell's car laughing and joking about the incident after the Plaintiff's arrest. Although that may be unprofessional and reflect poorly on the officers, it is evidence only that Stirmell had a negative opinion of the Plaintiff prior to December 14, 2011, and the other officers may have shared that opinion after the events of that night. There is no evidence that the officers conspired to deprive the Plaintiff of his statutory and constitutional rights.

Accordingly, Warnisher and Brown are entitled to summary judgment on Counts VI.

## IV. CONCLUSION

For all of these reasons, the Defendants are entitled to summary judgment on Counts I and III, which are excessive force claims asserted against Warnisher and Brown, respectively. In a separate Opinion and

Order, the Court is entering summary judgment in favor of Defendant Stirmell on the failure to intervene claim in Count V and the conspiracy claim asserted against him in Count VI. For the reasons stated herein, Warnisher and Brown are also entitled to summary judgment on the conspiracy claims asserted in Count VI.

Counts II and IV are state law assault and battery claims. Because all of the federal claims are being dismissed, the Court declines to exercise subject matter jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

<u>Ergo</u>, the Motion of Defendants Michael Brown and Chance Warnisher for Summary Judgment [d/e 54] is ALLOWED.

Counts I, III, V and VI are Dismissed with Prejudice.

Counts II and IV are Dismissed without Prejudice.

Any future Court settings are Canceled.

The Clerk will enter Judgment in favor of the Defendants.

CASE CLOSED.

ENTER: February 27, 2015

FOR THE COURT:

_s/Richard Mills_
Richard Mills
United States District Judge